ANNE MONROE *vs.* PAUL LAVIMODIERE.

JULY 8, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

MURDOCK, J. This is an action in assumpsit for breach of promise of marriage. In the Superior Court a verdict was returned for the plaintiff and damages awarded in the sum of $37,500. The defendant moved for a new trial. This motion was denied as to liability but a new trial was granted, unless the plaintiff should remit all damages in excess of $20,000. The plaintiff did not file a remittitur and the case is here on the exceptions of both parties.

Defendant's exceptions to be considered are to the refusal of the trial justice to grant his motion for a new trial unconditionally, to the admission of evidence and to the refusal to charge the jury as requested.

Plaintiff's exception is to the decision of the trial justice in reducing the amount of the verdict. The plaintiff is about 57 years of age and the defendant is several years her senior. They have known each other about 34 years. It appears from the evidence that the defendant when a young man came from Canada and lived with an aunt in Woonsocket and that the plaintiff occupied a tenement in the same house. They became friendly and plaintiff assisted the defendant in learning the English language. Defendant was married in 1906 and the friendship ceased for about three years after which it was resumed and plaintiff was on friendly terms not only with the defendant but with his wife and two children. On one occasion, while the defendant and his family were on a visit to Canada, plaintiff cared for his house. She occasionally accompanied the defendant and his family on automobile rides. She lives on Vine

street and defendant a short distance away on Gaskel street in the city of Woonsocket.

Defendant's wife died on October 10, 1925. About six weeks thereafter plaintiff says that defendant met her on the street near her home; that they talked about the death of Mrs. Lavimodiere and defendant expressed sorrow for his children who would be without a mother on the approaching Christmas; that he said before another Christmas he hoped to give them another wonderful mother; that he asked permission to call on plaintiff but that she would not consent because it was too soon after his wife's death. About two weeks later he rang her doorbell at night and she talked with him in the hallway; that he then and there made a proposal of marriage and she accepted on condition that the marriage should not take place until at least a year from the date of his wife's death; that defendant called on her at her home eight or nine times and took her riding in his car four or five times; that there was a discussion between them as to the marriage ceremony which was to be held quietly in the rectory of the church which they both attended; that the wedding was postponed by mutual consent on account of the defendant's health and that the marriage date was again set for April, 1927. The last time plaintiff saw defendant was in April of that year. Evidently rumors had reached her to the effect that defendant was paying attention to another woman. Plaintiff then wrote five letters to defendant, three of which are in evidence. Under date of May 16, 1927, she wrote that she was tired of waiting and watching for him to come to see her; that she must know what he intended to do and that she would not stand by and let another woman have him "but of course, if you don't want me and want to get rid of me, well, you can't do it without settling with me. So I must see you and have a talk with you and then I will go away and out of your life and you will never see me again." On May 21 she wrote again upbraiding him for not calling on her and informed him that she knew of his visits to

another woman.   December 5 she wrote in a milder tone expressing her love but made no reference to a time when she expected defendant would marry her.   February 4, 1928, defendant married his present wife and three days thereafter plaintiff consulted an attorney and the present action was commenced.

Defendant denied any offer of marriage on his part.   He admitted his acquaintance with and friendship for the plaintiff and that he sent her picture post cards of the conventional order when he was away on visits to various parts.   He denied that he called at plaintiff's house except on two occasions, once to borrow an umbrella and once on her invitation to see a new ceiling which her landlord had installed.   Defendant testified that plaintiff proposed marriage to him but that he did not accept.

The brief for defendant, in support of his exception to the denial of his motion for a new trial, stresses the fact that the alleged engagement was unaccompanied by the usual incidents of an engagement, such as an engagement ring and the attentions which engaged people usually pay to each other.   No witnesses testified that plaintiff and defendant were ever seen together or that defendant was ever seen entering or leaving plaintiff's house.

The plaintiff asserts with great positiveness that there was an offer of marriage by defendant which she accepted and defendant with equal positiveness denies that he ever made such an offer.   The circumstances surrounding the alleged engagement were such as to be properly presented to a jury on the question as to whether an engagement actually existed.   Two juries have resolved this question in favor of the plaintiff and the last verdict has the approval of the trial justice.

Plaintiff's version of her relations with defendant, if believed, are not so inherently improbable as to warrant us in saying that the verdict should be set aside on that ground.

Defendant's exceptions to the admission of testimony are directed principally to testimony concerning the relations

of plaintiff and defendant twenty years before defendant's first marriage. The trial justice ruled that all testimony as to a previous engagement between plaintiff and defendant was inadmissible but that testimony as to previous acquaintance and relations of the parties, exclusive of a previous engagement, was admissible for the purpose of showing their background and environment. 9 C. J. 350.

Defendant in his brief concedes that the admission of any one of the questions objected to was at best harmless error but asserts that taken as a whole they must have created in the minds of the jury a prejudice against the defendant. If testimony is admissible on one ground it cannot be excluded because it might be the basis of an inference that a fact, direct evidence as to which would be excluded, existed.

The plaintiff made the most of her opportunity in testifying as to past relations with the defendant and, if the impression was created that she was formerly engaged to him, it was not by direct testimony and was a consequence of testimony admitted for another purpose. Defendant's exception to this testimony is overruled.

The defendant also excepted to the admission of a newspaper account of his marriage to his present wife. The plaintiff testified that she first learned of the marriage through an article in a newspaper and the article was admitted for the purpose of corroborating the plaintiff's testimony. It should have been excluded. The fact that the defendant was married was admitted and there was no evidence offered in contradiction of plaintiff's statement that she first learned this fact through an article in a newspaper. However, we fail to see that its admission was particularly harmful to the defendant. We therefore hold that its admission was not reversible error.

An exception was taken to the admission of testimony of the clerk of the probate court of the city of Woonsocket who testified as to statements made by defendant's attorney representing him on a petition for the appointment of a

guardian of his infant son. The statement was made in connection with an inquiry as to the amount of said son's estate which he had inherited from his mother. The attorney, as testified to by the clerk of the court, said that the son was the owner of one-half of some bonds of the face value of $1,000 issued by a municipality in Canada and that the defendant was the owner of the other half.

The defendant was not in court and the attorney was not representing him in his individual capacity. The question of his ownership of the bonds was not before the court, which was interested solely in an inquiry as to the extent of his infant son's estate. Defendant was therefore not bound by way of admission through his attorney that he owned said bonds and the testimony of the clerk as to the statement made by said attorney should have been excluded. As there was other evidence of his ownership of the bonds in question, the admission of the testimony to which exception was taken is not reversible error.

After argument of counsel and charge to the jury, defendant presented five requests for additional instruction to the jury based on statements made by plaintiff's counsel in his argument, all of which were denied and exceptions to the denial noted. The first, second and fourth requests may properly be considered as having been covered by the general charge to the jury warning them to be guided by their own recollection of the testimony rather than any statement of counsel respecting the same.

The third request to charge is as follows: "The expression by counsel for the plaintiff of his own convictions as to the reasons for defendant's absence from the trial was improper and I instruct you to disregard it. The arguments of counsel are not evidence but are only to assist you in weighing and interpreting the evidence yourself and your recollection of what the testimony was controls over the recollection of Court or counsel."

The defendant did not appear at the trial and his testimony taken at the former trial was read to the jury. There

was medical testimony as to the physical condition of the defendant. His own physician testified that the defendant could not safely undergo the ordeal of testifying. He had previously suffered two cerebral hemorrhages and his blood pressure was high. Two physicians who examined the defendant on behalf of the plaintiff were not so positive in their opinion as to the danger to the defendant in appearing in court but they substantially agreed with defendant's physician that there would be danger of another shock in case defendant did appear. One of them, a Dr. Myers, testified in answer to the question by plaintiff's counsel: "Will you complete your answer and tell the judge what you mean, how great the danger is or how small it is." A. "Well, I really don't think that any physician can tell to what exact degree this man might be subjected by bringing into Court. He might come in several times and absolutely nothing happen to him. He might come in one time and something might happen to him. In plain language, I wouldn't want to take it upon my shoulders to bring that man into Court even once."

It does not appear in the record that there was a ruling by the trial justice that defendant's testimony given at the former trial was admissible owing to his inability to be present. Counsel for the defendant in offering his testimony given at the former trial simply said: "Owing to the absence of Mr. Lavimodiere and his inability to be present and testify in person we are going to read to you testimony that he gave at the former trial of this case. I will read part of it and Mr. Higgins will read part of it."

Defendant's testimony given at the former trial was not admissible, unless the defendant was unable to appear in court. 10 R. C. L. p. 966. Inability to appear must have been established by a ruling of the court or by agreement of counsel.

The plaintiff's counsel did not object to its admission and he himself read to the jury his cross-examination of the defendant at the former trial. It must, therefore, be taken

that the inability of the defendant to be present in court had been established as a fact either by a ruling of the court or by agreement of counsel, yet, in his argument to the jury, plaintiff's counsel said: "Mr. Foreman and Gentlemen of the jury, Paul Lavimodiere in my opinion is just as physically capable of standing on that witness stand or at least testifying in a chair as did Miss Monroe, as she is; but the coward in him, the coward that made him run on February 4th, 1928, when he got married, like a thief in the night, when he got married, a church member without the benefit of the banns of marriage, when he kept from his secretary or assistant, and until one week after the marriage, the secret that he was being married, when he like the wicked, flee when nobody pursues, he sneaked off and did what he knew was a dirty, contemptible trick, he had the same cowardice in his soul then that he has today. He cannot face twelve men, a jury and a judge, he doesn't dare . . . If he thought that he was right and he wanted a trial he would be here. If Paul Lavimodiere thought he was right he would be here, but he is wrong and he is laying down. . . . You don't know him. I have known him for twenty years. I have got to be careful what I say to twelve men when I am talking about a man who has been pictured to them as an invalid. I have got to be careful of what I say when a man is more of a blackguard and coward than an invalid. I have got to be careful when I say away down in my heart if this man had a bill for $1,000 to collect from any of you today he would be on that witness stand getting that pound of flesh. If he wanted to be here he would be here. He has talked and run out on you just like he talked and just like he ran out on Anne Munroe." This argument was improper, unfair and prejudicial to the rights of the defendant. If plaintiff's counsel was convinced that defendant was feigning illness, he should have objected to the admission of his testimony given at the former trial. Having allowed without objection said testimony to be read to the jury, he was precluded from commenting on the failure

of defendant to appear in person. This improper argument was not covered by the general charge of the trial justice that the jury must be guided by the evidence and not by statements of counsel. While a wide latitude is given counsel in commenting on the evidence and inferences to be drawn therefrom, the bounds of legitimate argument are passed when an attempt is made to influence the jury by argument of a question which is not present in the case. The trial justice of his own motion should have prevented counsel from arguing to the jury that the defendant was not present in court because he did not dare face court and jury.

The jury heard the testimony as to the defendant's health and, uninstructed as to their function with respect thereto, might have been led by this argument to believe that consideration of this question was within their province. The defendant's exception to the refusal of the trial justice to grant his third request for additional instruction is sustained.

As to the defendant's fifth request to charge, this should have been granted. Counsel argued to the jury that a woman on her marriage became entitled to one-third of her husband's property. There is no basis in law for this statement. Defendant's exception to the refusal of the court to so charge is likewise sustained.

As there is to be a new trial of the case, it is unnecessary to consider the plaintiff's exception.

On the ground of the trial justice's refusal to grant defendant's third and fifth requests for additional instruction to the jury, the case is remitted to the Superior Court for a new trial.

SWEENEY, J., dissenting. I agree with the portion of the opinion which holds, in substance, that the verdict for the plaintiff is not against the fair weight of the evidence and consequently that the trial justice did not err when he denied defendant's motion for a new trial on this ground.

The trial justice wrote a carefully prepared rescript in which he analyzed the testimony and concluded by saying:

"After a thorough and careful consideration of all the evidence, the Court has come to the conclusion that there is a preponderance in favor of the plaintiff and that the evidence justified a finding by the jury that the defendant had proposed marriage to the plaintiff and had been accepted. His change of mind or heart many months later cannot excuse him from the legal consequences which ensue. In such circumstances the jury's verdict must stand on the question of liability."

The trial justice submitted the case to the jury with a charge which stated so clearly and simply the sole issue raised by the conflicting evidence that no exception was taken by either party.

After the trial justice had completed his charge, he refused to grant five additional requests handed to him by defendant's counsel. The denial of these additional requests is the reason for five of defendant's exceptions. This court finds that three of these requests were included in the general charge and that the exceptions to their denial are without merit.

The opinion holds that because the third request was not granted a new trial must be had. I maintain that the third request was substantially included in the general charge and that defendant had no right to insist that it be repeated in the form presented by him. A comparison of the charge as given with defendant's request will prove my contention. Defendant's third request appears on page 7 of this opinion. It consists of two sentences. The charge of the trial justice on the subject-matter of this request occupies nearly a page and a half of the transcript. He said, in part, as follows: "Now during the trial of this case from the very beginning we have had statements of counsel as is customary. The plaintiff's counsel in opening his case makes certain statements. Similarly, . . . when defendant is about to put in his case, his counsel makes certain statements. It is also customary . . . for both counsel to make arguments to the jury at the conclusion of the testi-

mony. You will bear in mind, of course, that any statements or any arguments that are made by counsel are not evidence, . . . the arguments of counsel are to assist the jury in making certain deductions from the evidence which he claims was produced in court. . . . If one of the attorneys said: 'I recall that the evidence was so and so' you will understand, of course, that it is only his recollection. That does not bind you because you are the ones who are the judges of what actually happened and what evidence was given here. So if there is a clash between the recollection of either counsel and your recollection as to what a witness has said, you will in each case accept your own recollection in preference to any other.

"Now it is quite possible that counsel, in the excitement of the moment, will draw deductions and bring his own personality into a case. That is a common thing, in the trial of cases, for counsel to do. Of course you will understand, and you must give that so much weight as the argument in behalf of the client is entitled to, bearing in mind that that is not to be considered as evidence. Their arguments are merely to aid you, to assist you in the search for truth."

This court has held that where the court has correctly instructed the jury as to the law it is not required to repeat such request in the exact language requested by counsel; *Blake* v. *R. I. Co.*, 32 R. I. 213; and that it is not the privilege of counsel to dictate the words that shall be given in a charge to the jury if the law applicable to the case is correctly stated by the trial justice; *McGowan* v. *Newport Probate Court*, 27 R. I. 394, this principle of law is applied in this opinion as to three of defendant's requests and I maintain that it should be applied to his third request.

As it appears that the trial justice covered fully and completely in his general charge the matter contained in defendant's third request to charge, his exception to the denial of the request should be overruled under authority of these cases.

The opinion holds that the excerpts quoted from the argument of counsel for plaintiff "were improper, unfair and prejudicial" and orders a new trial on this ground. I maintain this matter is not before this court. No exceptions to the argument are contained in the bill of exceptions and this court has jurisdiction to consider only the exceptions stated in the bill and allowed by the trial justice. § 5125, G. L. 1923; 3 C. J. 895. No objection was made by defendant's counsel during the trial to any portion of the argument of plaintiff's counsel quoted in the opinion.

Since 1862 and until now the law of this State has been as stated in *Ames & Payne* v. *Potter, Ex.*, 7 R. I. 265: "If the defendant, without objection at the time, permitted the plaintiffs' counsel to draw inferences from this, or from any other facts in the case, which she or her counsel deemed to be unjust or unfair inferences; or, if without objection at the time, she or her counsel permitted the plaintiff's counsel to indulge in a style of rhetoric or a course of argument calculated, in her opinion or in the opinion of her counsel, to improperly inflame or prejudice or mislead the jury, it is too late, after verdict, to except and assign it as a cause for a new trial." In *Champlin* v. *Pawcatuck Valley St. Ry. Co.*, 33 R. I. 572, 585, defendant's attorney objected to remarks by plaintiff's attorney and the court instructed the jury relative thereto and defendant's exception to the remarks was not sustained. The court quoted from *State* v. *Farr*, 29 R. I. 72, 79, saying: "The defendant should first have requested the court to instruct the jury to disregard the remarks. If it had done this, and the court had refused, an exception to such refusal would have raised the question. If the court had complied with the request the incident would have been closed, for it is to be presumed that the jury would have obeyed the instructions of the court." These two cases are in accord with the rule in other states where it is generally held that in order that remarks of counsel may be considered on appeal objection must be made at the trial and a ruling had thereon; and that the

objection must be specific and made when the objectionable language is used.   38 Cyc. 1507, 8.

Although the matter of the argument of plaintiff's counsel is not properly before this court, as the propriety of the argument has been considered in the opinion I will also consider it.  The opinion says: (Plaintiff's counsel) "having allowed without objection said testimony (defendant's testimony at the former trial) to be read to the jury, he was precluded from commenting on the failure of defendant to appear in person.  This improper argument was not covered by the general charge of the trial justice that the jury must be guided by the evidence and not by statements of counsel.  .  .  .  The jury heard the testimony as to defendant's health and, uninstructed as to their function with respect thereto, might have been led by this argument to believe that consideration of this question was within their province."  It is a sufficient reply to this last sentence to say that this court has held that the absence of instructions is no ground for exception by a person who should have asked for more specific instructions.  *Prete* v. *Cray, C. T.,* 49 R. I. 209; *Violette* v. *Prov. Ice Co.,* 49 R. I. 3

The record shows that plaintiff's counsel was not commenting on the testimony given by defendant at the former trial but upon his testimony taken by deposition during the trial of the case.  The trial started May 27, 1932, and defendant's deposition was taken June 1, 1932, and was read to the jury by the stenographer who took the deposition.   The statute—§ 5015, G. L. 1923—provides that "no deposition, to be used in a jury trial, shall be taken during the progress of such trial, except upon order of the justice presiding."

The opinion states:  "The defendant did not appear at the trial and his testimony taken at the former trial was read to the jury.   There was medical testimony as to the physical condition of the defendant."  Defendant's physician and two other physicians testified as to the physical condition of defendant.  Why?  So defendant's deposition could be

taken during the progress of the trial and he thereby be excused from appearing before the jury. Dr. Myers testified that he examined defendant, found him up and dressed in his house. He was asked: "In your opinion, Doctor, is it physically possible, could Paul Lavimodiere, if he had an interest in court to require his presence and he should be desirous of attending court, could he appear in court? A. He could. Q. There is no question about that? A. No, sir." Dr. Israel testified he examined defendant at the same time and "found nothing seriously wrong with his heart." With this and other testimony relative to the good physical condition of defendant before the jury, plaintiff's counsel was within his rights in commenting upon the failure of defendant to appear and testify before the jury instead of sending in his testimony by way of deposition.

The trial justice, when denying defendant's motion for a new trial, said: "Defendant's counsel argues that the argument addressed to the jury by the plaintiff's counsel was impassioned both in its content and tone. Both counsel ably presented their respective sides to the jury and the court cannot say that either outdid or had any unfair advantage over the other. The testimony given by each of the parties readily lent itself to the drawing of inferences and deductions by opposing counsel in their addresses to the jury. In the court's charge the jury were instructed relative to the function of counsel's arguments. In the opinion of the court the jury's verdict was not improperly or unfairly influenced by the argument of plaintiff's counsel."

In *Mainz* v. *Lederer*, 21 R. I. 370, defendant claimed a new trial on the ground of improper argument by plaintiff's counsel. It appears that objection was made immediately to the argument by defendant's counsel. This court refused to grant a new trial on this ground and followed the rule, generally admitted, that a new trial should not be granted where a case is reasonably clear on its merits.

Defendant broke his agreement to marry plaintiff by marrying another woman February 4, 1928. The marriage

514

was kept secret for about ten days and, when plaintiff read of it in the newspapers, she consulted an attorney and commenced her action against defendant four days thereafter. Judgment was erroneously entered against plaintiff, and, as a result of the decision of this court, she commenced another action against defendant: *Monroe* v. *Lavimodiere* 50 R. I. 95.

The first trial of the case occupied four days and the jury returned a verdict for the plaintiff. The trial justice held the case for nearly eleven months before he granted defendant's motion for a new trial. The second trial occupied five days and again the jury returned a verdict for the plaintiff. This verdict has been approved by the trial justice. The issues were the same at each trial. No reversible error of law was committed during the last trial. At the first trial the jury saw and heard defendant while he was testifying, and they did not accept his testimony as true. At the last trial defendant's testimony at the previous trial was read to the jury and also his deposition which was taken during the trial, and the jury did not accept either as true.

Under the record in this case all of defendant's exceptions should be overruled and judgment entered for plaintiff on the verdict as ordered reduced by the trial justice.

HAHN, J., concurs in the opinion of SWEENEY, J.

*John R. Higgins*, for plaintiff.

*Patrick P. Curran, Hoyt W. Lark, Curran, Hart, Gainer & Carr*, for defendant.